IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Michael Marshall, | ) | Civil Action No. 2:10-cv-699-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| AT&T Mobility, | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff brought this action pursuant to 42 U.S.C. § 12101. As a result, this matter was referred to a Magistrate Judge for pre-trial proceedings. The Magistrate Judge has made a report and recommendation that Defendant's motion for summary judgment be granted. Plaintiff has failed to object. After a thorough review of this matter, this Court adopts the recommendation of the Magistrate Judge.

## Analysis

The magistrate judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report and

1

Recommendation, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir. 1983).

    I.    Wrongful Discharge Claim.

Plaintiff's ADA wrongful discharge claim is for disparate treatment, based on his allegation that he was discriminated against on the basis of a disability when he was terminated by the Defendant. Disparate treatment claims under the ADA are evaluated under the same standards as discrimination claims asserted under Title VII of the Civil Rights Act of 1964. *Cunningham v. Enterprise Rent-A-Car Co.*, No. 07-1615, 2010 WL 724507 at * 4 (W.D.Pa. Mar. 1, 2010); *Loveless v. Sherwin-Williams Co.*, 681 F.2d 230, 238 (4th Cir. 1982). Such claims require proof of intentional discrimination, either by direct evidence or by the structured procedures set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, Plaintiff has not offered any direct evidence of disability discrimination, and Defendant argues that Plaintiff has failed to present sufficient evidence to create a genuine issue of fact under the *McDonnell Douglas* proof scheme. This Court agrees.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in *McDonnell Douglas*. First, Plaintiff must establish a prima facie case of discrimination. If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against him. Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions. Third, if the Defendant shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its

actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's disability. *McDonnell Douglas Corp.*, 411 U.S. at 802-805; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-256 (1981); *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. *Texas Dep't of Community Affairs*, 450 U.S. at 252-253; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

Here, Defendant contends that Plaintiff cannot meet the third criteria of showing that he was fulfilling his employer's legitimate expectations at the time of his discharge, arguing that the evidence clearly shows that at the time of his discharge Plaintiff had not made any effort to contact his supervisor for almost four months and had abandoned his job. *See Runnebaum v. NationsBank of Maryland*, N.A., 123 F.3d 156, 174 (4th Cir. 1997) (upholding summary judgment in favor of the employer where the plaintiff's "continuing utter failure to attend to his assigned duties" established that he was not meeting his employer's expectations for his performance).

Plaintiff contends that he believed his employment had been terminated when he received the letter denying his STD benefits on February 26, 2009. However, that letter says nothing about Plaintiff being terminated from his job. Instead, the letter states that he would have to repay any benefits he had received from February 16, 2009 through the date he returned to work, while Plaintiff was to contact his superior if he intended to remain out of the workplace. That letter also noted the request for benefits had been denied was because Plaintiff had failed to provide any medical documentation to support

3

his request, despite repeated requests that he do so, although the letter also advised Plaintiff that the requested records could still be sent.

Plaintiff has presented no evidence to show that he ever sent any such records, and in fact concedes that he failed to even respond to this letter or to ever contact the Defendant again. However, the evidence shows that his supervisor tried to contact Plaintiff, both by calling him and by calling his mother, with whom he left messages for Plaintiff to call him. Plaintiff never answered or returned any of these phone calls. The Defendant also attempted to contact Plaintiff by mail at his last known address. Even assuming Plaintiff's testimony that he never received this mail to be true for purposes of summary judgment, that is not the fault of the Defendant. Plaintiff concedes that he never advised the Defendant he had a new or changed address, a concession he has to make considering that he also conceded he never contacted anyone with the Defendant about anything after he received the February 26th letter, and in fact had not spoken with anyone with the Defendant since his meeting with his supervisor on February 6, 2009. Moreover, the Defendant did not finally terminate Plaintiff from his employment until almost four (4) months later after trying to contact Plaintiff but never hearing back from him.

Considered in the light most favorable to the Plaintiff, the evidence before this Court does not create a genuine issue of act as to whether Plaintiff was adequately performing his job. "[A] regular and reliable level of attendance is an essential function of one's job." *Lamb v. Qualex, Inc.*, 99-1188, 2002 WL 500492, at * * 5-6 (4th Cir. Apr. 3, 2002) (internal citations omitted). Here, the evidence before the Court shows the Plaintiff abandoned his job.

In any event, even if the Court were to assume for purposes of summary judgment that Plaintiff had presented sufficient evidence to establish his prima facie case, the evidence before the Court is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's decision to terminate his employment. In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to discriminate against him because of his disability, he would not have been terminated. *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 234 (4th Cir. 1991). "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole . . . must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [discriminatory animus].'" *LeBlanc v. Great American Ins. Co*, 6 F.3d 836, 843 (1st Cir. 1993) (internal citations omitted). Here, Plaintiff has failed to present any such evidence.

Plaintiff's pretext argument is that the Defendant should have known that he had moved to Pennsylvania and should have asked his mother for his forwarding address, and that the Defendant's failure to do so shows that the real reason he was fired was because of his disability. But there is no evidence in the record showing pretext. The meeting on February 6, 2009, was the last time that anyone from Defendant's office ever saw or spoke to Plaintiff. While Plaintiff had previously discussed moving back to Pennsylvania, where he had more of a support network, Plaintiff made no mention of moving back to Pennsylvania during this meeting. Further, Plaintiff's denial of disability benefits was because Plaintiff had failed to provide any medical documentation to support his claim. Plaintiff has provided no evidence, or even argument, to contest this

fact, or to show that in response to the denial letter he ever provided any medical documentation to support his application.

In his response to summary judgment, Plaintiff contends that when he received the denial letter he believed his employment had been terminated because he was not at that point being paid and no one from his supervisory chain contacted him after he received the letter. However, the letter did not say that he would be contacted; rather, it specifically instructed Plaintiff to contact his supervisor. Plaintiff admits that even though he received this notification, he never contacted anyone with the Defendant. Plaintiff then moved back to Pennsylvania two (2) months later, in April 2009, but did not tell anyone with the Defendant that he had moved. But Plaintiff's supervisor made several attempts to contact Plaintiff to discuss his return to work. Further, although Plaintiff never answered these calls, his supervisor did manage to speak with Plaintiff's mother on more than one occasion and told her that he wanted Plaintiff to call him back.

Almost three months after Plaintiff had stopped reporting to work, Plaintiff's supervisor, in conjunction with Human Resources, sent Plaintiff a letter to Plaintiff's South Carolina address (the only address his employer had for him) regarding his leave and employment status. (Letter dated May 4, 2009 (Defendant's Exhibit H)). In the letter, it states that Plaintiff "ha[s] not returned to work since 2/9/09 and, therefore, ha[s] been unexcused from work." It further states that Plaintiff has not contacted his supervisor/employer, but provides Plaintiff one final opportunity to resolve his leave status. (*Id.*). Over one month later, on June 12, 2009, his supervisor, once again in conjunction with Human Resources, sent Plaintiff a second letter advising him that his employment was being terminated due to job abandonment. (*See* Letter dated June 12,

6

2009 (Defendant's Exhibit I)). The reasons for the termination was because "[Plaintiff] was sent the termination letter due to no contact with myself or anyone else that I was aware of in our company for quite some time." (*See* Grimsley Deposition, p. 11). The decision to terminate Plaintiff for job abandonment was made by several individuals in the employment of Defendant, including Grimsley, Christensen, Argoe and Karen Mendolia (Human Resources), and Allison Hall (Vice President and General Manager). (*See* Grimsley Deposition, pp. 82-83).

On April 15, 2009, shortly after Plaintiff's return to Pennsylvania, he was treated by Dr. Fozia Chatta. (*See* Chatta Deposition, p. 9). Dr. Chatta diagnosed Plaintiff as suffering from major depression, generalized anxiety, panic disorder and hypertension, confirming the diagnosis made by Dr. Pike in South Carolina on February 4, 2009. (*See* Chatta Deposition, pp. 13-15, 38-39; *see also* Plaintiff Deposition, p. 86). Dr. Chatta opined that, at the time of the first examination, Plaintiff's depression was so severe that he was unable to function without medications and, at the time, could not work in any capacity. (*See* Chatta Deposition, pp. 15-16). Subsequently, Dr. Chatta's diagnosis was confirmed by two psychiatrists. (*See* Chatta Deposition, pp. 21-26; Chatta Deposition Exhibits 4-5). Dr. Chatta opined that Plaintiff's conditions are permanent, although he could function in employment with accommodation. (*See* Chatta Deposition, pp. 28-29, 45). However, there is no evidence that any of this information was ever relayed to the Defendant prior to Plaintiff's termination. *Cf. Starnes v. General Electric Co.*, 201 F.Supp.2d 549, 561 (M.D.N.C. 2002) ("Plaintiff's claim that he was performing adequately prior to the onset of his alleged disability does not evidence pretext in light of the fact that immediately prior to his termination, Plaintiff stayed out of work for months

without a medical excuse."). Furthermore, Plaintiff does not dispute receiving the Defendant's letter dated February 26, 2009, which requested him to contact the Defendant.

Thus, based on this Record, it is undisputed that Plaintiff failed to return to work or contact his employer to request accommodation after his request for disability benefits was denied. Plaintiff has not shown that other employees who absented themselves from work without contacting the employer were treated more favorably. Accordingly, Defendant is entitled to summary judgment on Plaintiff's wrongful discharge claim.

II.     Accommodation Claims.

Plaintiff also asserts that the Defendant failed to accommodate his disability when it failed to arrange for him to transfer his job to Pennsylvania. In order to establish a prima facie case for failure to accommodate, Plaintiff must show: (1) he had a "disability"; (2) the Defendant had notice of his disability; (3) with reasonable accommodation, he could perform the essential functions of his position; and (4) the employer refused to make such accommodations. *Haneke v. Mid-Atlantic Capital Management*, 131 Fed.Appx. 399, 400 (4th Cir. May 10, 2005). For purposes of its motion, the Defendant has assumed that Plaintiff can prove the first and second criteria of his prima facie case. (*See* Memorandum in Support of Summary Judgment, p. 19). With regard to the fourth element, Plaintiff contends that the Defendant denied him two specific accommodations—STD benefits and/or a transfer. It is undisputed that Plaintiff applied for STD benefits and also requested a transfer as an accommodation. It is also undisputed that Plaintiff's transfer request was not approved.

However, Defendant contests Plaintiff's claim that he could have performed the essential elements of his job if he had been transferred to Pennsylvania. Defendant notes that on April 15, 2009, shortly after Plaintiff's return to Pennsylvania, he was treated by Dr. Fozia Chatta. (*See* Chatta Deposition, p. 9). Dr. Chatta diagnosed Plaintiff as suffering from major depression, generalized anxiety, panic disorder and hypertension, confirming the diagnosis made by Dr. Pike in South Carolina on February 4, 2009. (*See* Chatta Deposition, pp. 13-15, 38-39; *see also* Plaintiff Deposition, p. 86). Dr. Chatta opined that, at the time of the first examination, Plaintiff's depression was so severe that he was unable to function without medications and, at the time, could not work in any capacity. (*See* Chatta Deposition, pp. 15-16). Subsequently, Dr. Chatta's diagnosis was confirmed by two psychiatrists. (*See* Chatta Deposition, pp. 21-26; Chatta Deposition Exhibits 4-5). Defendant argues that this evidence shows that Plaintiff could not have performed his job even with his requested accommodation. *Lamb v. Qualex, Inc.*, 33 Fed. Appx. 49 (4th Cir. 2002)[summary judgment in favor of defendant employer upheld where the plaintiff, a clinically depressed employee, failed to produce evidence showing that he could perform the essential functions of his job with reasonable accommodation].

However, Dr. Chatta did also later opine that, while Plaintiff's conditions are permanent, he could function in employment with an accommodation. (*See* Chatta Deposition, pp. 28-29, 45). While Dr. Chatta does not state what that accommodation would be, even if the Court were to assume *arguendo* that Plaintiff could have performed the essential functions of his job for at least part of the time period at issue, Plaintiff's evidence does not satisfy the remaining *McDonnell Douglas* criteria as noted herein.

9

With respect to whether the Defendant has met its burden of producing a legitimate, non-discriminatory reason for its actions, the Defendant has submitted evidence to show that it had a neutral policy of requiring employees wishing to transfer to apply in that division with that manager and that the most qualified employee would be selected. Moreover, there is no evidence that Plaintiff even applied for a transfer—only fleeting references to him asking about whether such an option might exist. Furthermore, the letter denying Plaintiff STD benefits stated that the Defendant had not received medical documentation to confirm Plaintiff's disability and specifically requested Plaintiff to send documentation that he was not able to perform the essential functions of his job. Hence, Plaintiff has presented no evidence to show that he ever sent this information to the Defendant. This evidence is sufficient to establish a legitimate, non-discriminatory reason for the Defendant's actions in refusing benefits and why he was not transferred to another store.

As a result, Plaintiff must present evidence of pretext in the making of the decision not to accommodate him with a transfer or STD benefits in order to avoid summary judgment on his failure to accommodate claim. However, Plaintiff has failed to present any such evidence. First, there is no evidence of a discriminatory animus by the Defendant in the denial of STD benefits. In fact, both parties agree that it was the Plaintiff's supervisors who encouraged him to apply for STD benefits, while conversely the decision to deny Plaintiff's application for STD benefits was not made by his supervisor or other immediate colleagues nor by any management employee of the Defendant. Further, the reason for denying benefits was the fault of Plaintiff—he failed to provide the necessary medical documentation. The denial letter also specifically

requested that Plaintiff send documentation that he was not able to perform the essential functions of his job, and that once such documents were received, they would be reviewed for a subsequent determination. Plaintiff has presented no evidence to show that he ever forwarded any such documentation to the Defendant, and in fact has not even argued that he ever made any attempt to do so. Accordingly, Plaintiff has not shown any pretext with regard to the denial of his STD benefits.

With respect to the Defendant's failure to secure or facilitate a transfer of the Plaintiff to an open position in Pennsylvania, a transfer could be a reasonable accommodation where it has been the employer's practice to do so. *Felix v. City and County of Denver*, 729 F.Supp.2d 1243, 1264 (D.Colo. 2010); *Geuss v. Pfizer*, 971 F.Supp. 164, 174-175 (E.D.Pa. 1996) (applying rule that employer might be required to transfer an employee to a new supervisor (or department) to accommodate employee's disability but, at a minimum, the employee must first show that the employer abides such transfers in other situations). Here, however, it is undisputed that the Defendant's policy was if an employee wished to transfer to another market (with an entirely different management team), he or she had to apply for an open position within that market and interview with the appropriate hiring manager(s). If it was determined that the employee was the most qualified candidate, he or she would be awarded the position. *Id.* The evidence shows that the Defendant complied with this policy because Plaintiff was informed that he could apply for any position that was open and available in Pennsylvania. While Plaintiff did not receive one of these positions, Plaintiff has not provided any evidence to show that he was denied one of these positions even though he was the most qualified applicant for any open position, nor has he so argued.

11

Further, while the Fourth Circuit has not specifically addressed it, Defendant's failure to award one of these open positions to the Plaintiff as an accommodation for his disability is, in itself not a violation either. *See Huber v. Wal-Mart Stores, Inc.*, 486 F.3d 480, 483 (8th Cir. 2007) (finding that the ADA does not require an employer to turn away a superior applicant in preference to the disabled employee); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 459 (6th Cir. 2004); *Terrell v. US Air*, 132 F.3d 621, 627 (11th Cir. 1998); *Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 384-385 (2d Cir. 1996); *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995) (noting "we do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled."); *see also Jackson v. FUJIFILM Mfg. USA, Inc.*, No 09-1328, 2011 WL 494281 at *2 (D.S.C. Feb. 7, 2011).

Finally, Plaintiff testified that he was not aware of any other employee within the company who was transferred as a means of accommodation to another market or area, and he has otherwise failed to present any evidence that it was the Defendant's practice to do so. Plaintiff has also failed to present any evidence to show, or even to argue, that he was the most qualified applicant for any of the positions at issue. Hence, Plaintiff has offered no evidence to show a discriminatory animus in this decision other than his own speculation. Based on this failure and the others cited above, Plaintiff has not presented evidence sufficient to create a genuine issue of fact that Plaintiff was denied a transfer due to a discriminatory animus sufficient to survive summary judgment on this claim. Therefore, to the extent Plaintiff even properly raised a failure to accommodate claim in his Complaint, the Defendant is entitled to summary judgment on this claim.

## Conclusion

Based on the above, Defendant's motion for summary judgment is **granted** and the R&R of the Magistrate Judge is adopted as the order of this Court.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

June 6, 2011
Charleston, South Carolina

13